**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RAVEN DAMIEN MEADER
BURKHOW,

        Defendant.

No. 19-CR-59-CJW-MAR

**ORDER**

_____

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................. 2

II.    STANDARD OF REVIEW.................................................... 3

III.   FACTUAL BACKGROUND ............................................... 7

IV.   ANALYSIS........................................................................10

      A.    Portions of the R&R with No Objections ......................10

      B.    Facebook Warrants ................................................11

            1.    Timeliness of Defendant's Motion and Argument...................12

            2.    Overbreadth................................................14

            3.    *Leon* Good Faith Exception .............................21

            4.    Severance as a Remedy ..................................24

V.    CONCLUSION ..................................................................25

## I.   INTRODUCTION

This matter is before the Court on a Report and Recommendation ("R&R") (Doc. 123) of the Honorable Mark A. Roberts, United States Magistrate Judge.   On May 23, 2019, a grand jury returned an Indictment charging defendant with seven offenses. (Doc. 2).   On June 19, 2019, a grand jury returned a Superseding Indictment charging defendant with fourteen offenses.   (Doc. 9).   On September 12, 2019, defendant filed his first motion to suppress, return seized property, and dismiss.   (Doc. 19).   On September 25, 2019, a grand jury returned a Second Superseding Indictment charging defendant with forty-two offenses.   (Doc. 28).   On October 4, 2019, the government filed a resistance to defendant's first motion.   (Doc. 38).   On November 1, 2019, Judge Roberts issued a partial R&R on defendant's first motion which denied defendant's requests for various evidentiary hearings and addressed other peripheral matters.   (Doc. 58).   On November 22, 2019, this Court sustained in part and overruled in part defendant's objections and adopted Judge Roberts' partial R&R with modification. (Doc. 78).   Thus, defendant's first motion remains outstanding only as to the merits of suppression and dismissal.

On October 30, 2019, defendant filed a second motion to suppress and dismiss. (Doc. 54).   On November 8, 2019, defendant filed a brief in support of his motion. (Doc. 65).   On November 18, 2019, the government filed a timely resistance.   (Doc. 74).   On November 27, 2019, following defendant's request and receipt of an extension of time (Docs. 75 & 77), defendant filed a timely reply to the government's resistance. (Doc. 81).   On December 5, 2019, Judge Roberts held a hearing on defendant's two motions to suppress and dismiss.[1]   (Doc. 87).

---

[1] On December 11, 2019, defendant filed a third motion to dismiss.   (Doc. 89).   On January 8, 2020, this Court, without an R&R, denied defendant's third motion.   (Doc. 122).

On January 13, 2020, Judge Roberts issued his R&R, recommending that the Court grant in part, deny as moot in part, and deny in part defendant's motions to suppress and dismiss. (Doc. 123) (citing Docs. 19 & 54). Judge Roberts recommended that the Court find that the warrants to search defendant's Facebook were improper due to the absence of any temporal limitations and thus suppress any evidence resulting from them. Judge Roberts recommended denying defendant's motions in all other respects. The deadline for filing objections to the R&R was January 27, 2020. (*Id.*, at 165-66). On January 27, 2020, the government objected to Judge Roberts' findings as to the Facebook warrants. (Doc. 136). Defendant did not file any objections. On February 3, 2020, defendant filed a timely response to the government's objection.[2] (Doc. 137).

For the following reasons, the Court **overrules in part** and **sustains in part** the government's objections (Doc. 136), **adopts in part** and **rejects in part** Judge Roberts' R&R (Doc. 123), and **denies** both of defendant's motions to dismiss and suppress (Docs.19 & 54).

## II.     STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R pursuant to the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

---

[2] In the caption and on several pages of his response, defendant's counsel repeatedly refers to the Honorable Mark A. Roberts by the title "magistrate." (Docs. 137, at 1, 3, 5, 6 9). The Court takes this opportunity to remind counsel that the proper title is United States Magistrate Judge. *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089 (1990). This title has been in use for three decades now and the Court expects counsel to treat judicial officers with respect by using their proper title. *See* Ruth Dapper, *A Judge by Any Other Name? Mistitling of the United States Magistrate Judge*, 9 FED. CTS. L. REV. 1, 17 (Fall 2015). Thus, counsel should use "magistrate judge" rather than simply "magistrate."

> magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen de novo review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R.Rep. No. 94–1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review

generally entails review of an entire matter, in the context of Section 636 a district court's required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask." (emphasis added)).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has concluded that general objections require "full de novo review" if the record is concise. *Id.* ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate.").

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990)

(noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

The Court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this Court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need

only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the Court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54. Thus, although a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

## III.  FACTUAL BACKGROUND

After reviewing the record, the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in his R&R. (Doc. 123, at 8-15). Further, neither party has objected to Judge Roberts' factual findings. Therefore, the Court adopts and incorporates Judge Roberts' factual findings in relevant part here.

> **[The GPS Warrant:]** On March 29, 2019, Special Deputy Joshua D. Lupkes of the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") applied for a warrant to install a GPS tracking device on Defendant's car, alleging there was probable cause to believe the car was being used "in connection with violations of federal law, to include Title 21 United States Code, Section 841." (Def. Ex. F at 1.) The vehicle in question is a red four-door Buick LaCrosse ("the Buick") with Iowa license plates that is registered to Defendant. (*Id.*) The affidavit in support of the warrant described Special Deputy Lupkes's professional background in law enforcement of more than twenty years. The affidavit contained the caveat:
>
>> The information set forth in this affidavit is based upon my personal observations, my training and experience, and information obtained from other law enforcement officials and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

(*Id.* Aff. ¶ 2.) The affidavit described how a confidential source ("CS") had provided information about Defendant selling firearms and "multiple-ounce quantities of cocaine." (*Id.* ¶ 3.) The CS said Defendant sells firearms without manufacturer serial numbers, fully automatic rifles, and silencers. (*Id.*) The affidavit described a March 12, 2019 controlled purchase of cocaine from Defendant in downtown Cedar Rapids and the prior surveillance of the Buick from a downtown Cedar Rapids parking lot to the Marion, Iowa airport, and back. (*Id.* ¶¶ 5-6.) The affidavit also described the conversation recorded between the CS and Defendant during the March 12 controlled purchase about obtaining a rifle converted to fully automatic firing. (*Id.* ¶ 8.) Defendant told the CS there were five rifles in the process of such conversion, but not yet completed. (*Id.*) The affidavit also describes a March 14, 2019 purchase by the CS of more cocaine and a firearm with a silencer and the concomitant surveillance of Defendant. (*Id.* ¶¶ 10-13.) Ultimately, I concluded there was probable cause and ordered that the warrant be issued. Thereafter, the GPS tracking device was installed on the Buick. More facts related to this warrant are discussed below.

**[The Apartment Warrant:]** On April 25, 2019, Special Deputy Lupkes applied for and obtained a warrant to search Defendant's apartment for, among other things, evidence of firearms offenses, distribution of controlled substances, and possession of unregistered firearms. (Def. Ex. G.) This warrant application included much of the information previously relied upon, including the March 12 and 14 controlled purchases. It also provided additional information, including an April 1, 2019 controlled purchase by the CS of more cocaine and discussion of Defendant's efforts to obtain fully automatic rifles and a handgun with a silencer for resale. (*Id.* Aff. ¶ 20.) After the controlled purchase, the CS showed law enforcement a message received from Defendant with a picture of an apparent improvised explosive device and the statement, "If you need somewhere to go boom I can make it happen btw, for a small price." (*Id.* ¶ 21.)

Also described in the affidavit was an April 15, 2019 controlled purchase of cocaine in the alley doorway to Defendant's apartment building. This time, the controlled purchase was observed by an undercover law enforcement officer. (*Id.* ¶ 23.) Defendant told the CS that Defendant would soon have the requested firearms available for purchase. (*Id.* ¶ 24.) The affidavit describes the CS's April 23, 2019 receipt of videos from Defendant depicting what appeared to be two rifles firing in a fully-

automatic capacity and the messaging application discussion between them about the CS's desire to purchase them.  (*Id.* ¶ 27.)  Contemporaneously, the GPS tracking device showed the Buick parked near a firearm manufacturing business in Des Moines, Iowa.  (*Id.*)

On April 24, 2019, Defendant messaged the CS that one style of rifles would be available on April 26, 2019.  At the same time, law enforcement observed Defendant exit the firearm manufacturer and leave in the Buick.  (*Id.* ¶ 28.)  The Buick returned to Cedar Rapids that evening.

This affidavit also provided information that all the controlled purchases were conducted in the alley door leading to Defendant's apartment building.  (*Id.* ¶¶ 8, 12, 19, 23.)  The affidavit stated that law enforcement had determined that Defendant was the tenant for apartment 206 of the building at 211 First Avenue SE.  (*Id.* ¶ 16.)  The affidavit alleged there was probable cause to believe Defendant committed drug and firearms offenses.  (*Id.* ¶ 3.)  The apartment was searched on April 29, 2019.  The facts alleged in this affidavit as well as the surrounding circumstances leading up to its issuance and execution will be addressed below.

**[The Criminal Complaint:]** On April 30, 2019, Defendant was charged by a criminal complaint with the crimes of "Possession of Firearm by User of Controlled Substance" in violation of 18 U.S.C. Sections 922(g)(3) and 924(a)(2) and "Distribution of Controlled Substance" in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C).  (Def. Ex. H.)  This complaint was supported by an affidavit of Special Deputy Lupkes and it was sworn to before me and signed in my presence.  The significance of the Complaint is limited given that the Government subsequently obtained an indictment and two superseding indictments.  Nevertheless, it does describe the April 29, 2019 controlled purchase by the CS of more cocaine and a rifle that had been converted to fully automatic firing with an integrated silencer.  (*Id.* Aff. ¶¶ 29-33.)  More specifically, the Complaint describes the weapon as "an AR style rifle chambered in .300 Blackout, without markings or serial numbers.  The rifle was equipped with an integrated suspected silencer," although its status had not been determined by the ATF.  (*Id.* ¶ 33.)

Defendant was detained after this purchase pursuant to the search warrant for the apartment and was found to be armed with two handguns and a knife.  (*Id.* ¶ 34.)  As a result of the search, "law enforcement seized approximately fourteen (14) firearms, eight (8) suspected silencers, and

three (3) suspected integrated silencers, [178 grams of] suspected cocaine, thousands of rounds of ammunition, a currency counting machine, drug paraphernalia, a large safe, and numerous other items." (*Id.* ¶ 35.) During a post-*Miranda* interview, Defendant admitted being a user of controlled substances. (*Id.* ¶ 36.)

[**The Urine Warrant:**] At the time the Complaint was sworn to, Special Deputy Lupkes also obtained a warrant for Defendant's arrest and a warrant to seize and test Defendant's urine. The affidavit in support of the warrant for urine specimen was based on the allegation that Defendant had possessed a firearm as a user of controlled substances in violation of 18 U.S.C. Section 922(g)(3) and 924(a)(2). (Def. Ex. A.) This affidavit contained essentially the same factual information as the affidavit in support of the Complaint.

[**Car, Safe, Phone, Facebook, and Computer Warrants:**] Special Deputy Lupkes later applied for and obtained warrants to search Defendant's car, safe, cell phone, computer, and Facebook account. (Def. Exs. B, C, D, E (Buick, iPhone, and Facebooks warrants); 19-MJ-167 (Computer warrant).) Defendant does not directly challenge these warrants. Rather, he asserts the evidence obtained as a result of these warrants should be suppressed as derivative of the earlier warrants. A more detailed discussion of these warrants is unnecessary here.

(Doc. 123, at 8-12) (footnotes omitted).

## IV.    ANALYSIS

### A.    Portions of the R&R with No Objections

The deadline to object to the R&R has expired. Defendant filed no objections. The government has only objected to Judge Roberts' findings as to the Facebook warrants. Thus, the parties have waived their rights to a de novo review of all the portions of the R&R which were not objected to. *See, e.g.*, *United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001) ("Appellant's failure to file any objections waived his right to de novo review by the district court of any portion of the report and recommendation of the magistrate judge as well as his right to appeal from the findings of fact contained therein." (citation and internal quotation marks omitted)). Therefore,

the Court reviews these portions of Judge Roberts' R&R for clear error. *See id.* The Court finds no clear error in these portions of Judge Roberts' R&R.

Thus, the Court **adopts** the factual findings and legal conclusions in the R&R without modification as to all portions that the parties did not object to. (Doc. 123). Defendant's motions to suppress and dismiss are thus **denied** as to these portions. (Docs. 19 & 54).

### B.    *Facebook Warrants*

The Court will, however, review de novo the only portion of the R&R that was objected to; the Facebook warrants.[3]   The first Facebook warrant allowed police to access data related to defendant's Facebook account and the second warrant allowed police to search, download, and save relevant information discovered pursuant to the first warrant.   The warrants allowed officers to search for information relevant to defendant's possession of firearms and use and distribution of controlled substances.   The warrants applied to a Facebook account associated with defendant which had publicly-available photos of a person who appeared to be defendant and individuals with what appeared to be firearms.   The warrant allowed law enforcement officers to seize virtually all the information on defendant's Facebook account with no temporal limitations.

In his R&R, Judge Roberts found that the two Facebook warrants were overbroad because they lacked temporal limitations on information to be seized.   (Doc. 123, at 90-91).   Judge Roberts acknowledged that defendant did not brief this issue but instead only raised it orally at the hearing on the motions.   Judge Roberts concluded that because people "often begin Facebook accounts in their youth and that information going back to Defendant's teen years or childhood cannot be relevant" that the warrants were overbroad.   (*Id.*).   Judge Roberts further held that the good faith exception from *United*

---

[3] The Court agrees with the government that its objection is not mooted by defendant's entry of guilty pleas to several counts.   (Doc. 136, at 1 n.1).

*States v. Leon*, 468 U.S. 897 (1984), did not apply because officers' reliance on the warrant without any temporal limitations was unreasonable.[4]  (*Id.*, at 97).

In its objection, the government contends that (1) defendant failed to timely file his motion to suppress as to this issue and failed to timely raise the issue of the warrant's lack of temporal limitations, (2) the Facebook warrants were not overbroad, (3) if the warrants were overbroad, that the *Leon* good faith exception applies, and (4) severance would be the appropriate remedy for any violation, not complete suppression.  (Doc. 136).[5]  The Court will address each argument in turn.

### 1. Timeliness of Defendant's Motion and Argument

In its objections, the government asserts two arguments regarding timeliness. (Doc. 136, at 14-17).  First, the government argues that defendant's motion to suppress the Facebook warrants was not timely.  Specifically, the government asserts that defendant was only granted an extension of time to file pretrial motions which "related

---

[4] In his R&R, Judge Roberts also concluded that suppression was not warranted based on any alleged delay in the execution of the Facebook warrants or on a lack of probable cause.  (Doc. 123, at 84-89).  Neither party has objected to these conclusions.  Thus, as above, the Court reviews these sections for clear error.  *See, e.g.*, *Newton*, 259 F.3d at 966.  Finding none, the Court adopts Judge Roberts' conclusions on these issues.

[5] The government also asserts that Judge Roberts relied on inaccurate information in his R&R. (Doc. 136, at 17-18).  In his R&R, Judge Roberts stated that "[defense] [c]ounsel noted that people often begin Facebook accounts in their youth[.]"  (Doc. 123, at 90).  The government contends that "defendant's counsel knew" this statement was inaccurate because defendant's Facebook was created on January 18, 2012, and the government only obtained account data from May 3, 2017, to May 4, 2019.  (Doc. 136, at 18).  The Court concurs with defendant that "[t]he question is not what was obtained, but what limitation was placed upon what could be obtained."  (Doc. 137, at 4).  People often create Facebook accounts in their youth, and thus counsel's statement was accurate and Judge Roberts properly considered it.  Had counsel claimed that defendant began his Facebook account in his youth, that would have been an inaccurate statement.  Whether defendant in fact opened his Facebook account in his youth or not, the warrant had the potential to disclose information dating back to when defendant was seventeen.

to new charges in the Second Superseding Indictment." Because the Facebook warrants do not relate to the Second Superseding Indictment and defendant failed to raise this issue in his first motion, the government argues defendant's motion is untimely as to this issue in its entirety. (*Id.*, at 14-16). Second, the government also argues that defendant never challenged the Facebook warrants' lack of temporal limitations until the hearing on December 5, 2019. Therefore, the government asserts that this specific ground was untimely raised and was thus waived. (*Id.*, at 16-17).

In support of its first argument, the government cites Exhibit 6 from the detention hearing to show that the May 10, 2019 Facebook warrant was disclosed to defendant on August 13, 2019. (*Id.*, at 14, 15) (citing Doc. 71-7, at 2). As defendant notes in his response (Doc. 137, at 7-8), Exhibit 6 does not reflect that the May 10, 2019 Facebook warrant (19-MJ-166) was disclosed to defendant on August 13, 2019. Exhibit 6 only shows that a July 24, 2019 Facebook warrant (19-MJ-259) was disclosed. (Doc. 71-7, at 2). Defendant asserts that he did not receive the May 10, 2019 Facebook warrant until September 17, 2019, thus making his October 30, 2019 motion to suppress as timely as possible under the circumstances. (Doc. 137, at 7-8). Moreover, defendant cites Exhibit D to show that the warrant was not returned to the Court until September 16, 2019. (*Id.*). Given that it appears that disclosure did not occur, the Court declines to find that defendant's motion was untimely as to this issue.

As to the government's second argument, the Court recognizes that defendant did not explicitly raise the lack of temporal limitations in the Facebook warrants until the hearing. Despite defendant's delay, Judge Roberts acted within his authority in considering this argument. Thus, the Court declines to forego addressing the merits of this issue merely because of defendant's delay in explicitly raising it.

Thus, the Court **overrules** the government's objections on this issue and **adopts** Judge Roberts' R&R without modification.

## 2. *Overbreadth*

In its objections, the government argues that the Facebook warrants were not unconstitutionally overbroad. (Doc. 136, at 8-14). The government notes that the warrants were issued pursuant to Federal Rule of Criminal Procedure 41(e)(2)(B) and "required Facebook to *disclose* to the government a wide-variety of information from defendant's Facebook account, but authorized the government to *seize* a limited amount of information related to the specific offense[s] under investigation[.]" (*Id.*, at 9). These offenses were possession of a firearm by a user of a controlled substance in violation of Title 18, United States Code, Section 922(g)(3), possession of unregistered firearms in violation of Title 26, United States Code, Section 5861, and distribution of controlled substances in violation of Title 21, United States Code, Section 841(a)(1). (Doc. 123, at 80-81). The government further argues that because "there was no indication of how long defendant had been involved" in the criminal conduct at issue, it was reasonable to review defendant's entire Facebook account. (Doc. 136, at 10-11).

The Fourth Amendment to the United States Constitution requires, among other things, that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980). Thus, to avoid a "general, exploratory rummaging in a person's belongings," *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (internal quotation marks omitted), warrants must state with particularity the scope of the authorized search, *Kentucky v. King*, 563 U.S. 452, 459 (2011). The warrant's scope should not be "broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013). Courts should evaluate a warrant's particularity for "practical

accuracy," not "hypertechnical" accuracy. *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (citation omitted). In sum, there must be "a nexus between the contraband and the place to be search" for a warrant to be valid. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

"A general search of electronic data is an especially potent threat to privacy because hard drives and email accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] may contain.'" *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (quoting *Galpin*, 720 F.3d at 445 (alternations in original)). This threat is also present when searching a person's social media profile on sites such as Facebook, which provide "a single window through which almost every detail of a person's life is visible. Indeed, Facebook is designed to replicate, record, and facilitate personal, familial, social, professional, and financial activity and networks." *United States v. Shipp*, No. 19-CR-029 (NGG), 2019 WL 3082484, at *5 (E.D.N.Y. July 15, 2019). Further, although traditional searches of electronic records have generally required a cursory examination of irrelevant documents to determine that they are in fact irrelevant to the search, *Ulbricht*, 858 F.3d at 100, modern social media companies can provide more precise data to police, *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) ("[W]hen it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data."). Thus, given the wide array of personal information contained in an individual's social media account and the platform's ability to fulfill specific data requests, search warrants for social media profiles "can and should be targeted and particular." *United States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 WL 4455997, at *4 (E.D. Ky. Aug. 30, 2019) (emphasis removed).

Some courts have held that a warrant to search a defendant's social media account is not overbroad if it particularly describes the information to be disclosed and the offense

being investigated. *See, e.g.*, *Ulbricht*, 858 F.3d at 104 (finding the warrant to search a defendant's Google and Facebook accounts was not overbroad because it listed the offenses to be investigated, things to be searched, and information to be seized); *United States v. Allen*, No. 16-10141-01-EFM, 2018 WL 1726349, at *6 (D. Kan. Apr. 10, 2018) (finding that a warrant to search the defendant's Facebook was not overbroad despite the lack of temporal limitations because it was limited to gathering evidence of a specified crime which by its nature required a broad search); *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598, at *26 (E.D.N.Y. Dec. 21, 2015) (concluding that a warrant to search a Facebook account is sufficiently particular if it is "limited by reference to an exemplary list of items to be seized and the crime being investigated[.]"); *United States v. Sharp*, No. 1:14-CR-00229-TCB-RGV, 2015 U.S. Dist. LEXIS 102406, at *30-31 (N.D. Ga. June 12, 2015) (finding that a warrant issued pursuant to Federal Rule of Criminal Procedure 41(e)(2)(B) to search the defendant's Facebook account for evidence of copyright infringement was proper despite the lack of time or subject matter limitations). Such decisions emphasize that the mere fact that a warrant calls for a broad seizure of items does not alone dictate that the warrant is overbroad. *See, e.g.*, *Sharp*, 2015 U.S. Dist. LEXIS 102406, at *31 (citing *United States v. Sugar*, 606 F. Supp. 1134, 1151 (S.D.N.Y. 1985)).

Other courts have held that "[i]t is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *United States v. Irving*, 347 F. Supp. 3d 615, 624 (D. Kan. 2018) (finding a warrant to search a defendant's Facebook was overbroad when defined only by a specified crime without any other scope or time limitations) (quoting *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009)). Courts have noted that warrants for social media accounts should be tailored in time or to relevant persons to

prevent a general rummaging. *United States v. Chavez*, No. 3:18-CR-00311-MOC-DCK-3, 2019 WL 5849895, at *9 (W.D.N.C. Nov. 7, 2019) (holding that although probable cause supported the warrant to search the defendant's Facebook account, the failure to limit the warrant temporally or to members of the fraud caused it to be overbroad); *see also United States v. Charles*, No. 16-065 (JNE/FLN), 2016 WL 5939333, at *3 (D. Minn. Oct. 12, 2016) (rejecting the defendant's argument that the warrant to search his Facebook was overbroad in part because the warrant was "for a specified, fairly narrow period of time close in time" to the criminal activity); *United States v. Hamilton*, No. 16-20062, 2017 WL 1376586, at *8, *10 (E.D. Mich. Apr. 11, 2017) (finding that a warrant to search the defendant's Facebook was not overbroad in part because it was limited to the time period of the criminal conduct at issue). In other words, such searches "should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

The extent to which a search can be limited, however, turns greatly on the posture of the investigation at issue. The court in *United States v. Shipp* acknowledged that the lack of temporal limitations in a warrant to search a Facebook profile is troubling when such limitations were possible:

> Moreover, although the Facebook Warrant only permitted the government to seize "evidence of a violation of 18 U.S.C. § 922(g) involving [the defendant] since January 1, 2018," the government was permitted to search the entire Facebook account since its creation. "A warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular." *Zemlyansky*, 945 F. Supp. 2d at 464. . . . Although a temporal limitation for the data being searched is not "an absolute necessity," *see United States v. Hernandez*, No. 09-CR-625 (HB), 2010 U.S. Dist. LEXIS 719, 2010 WL 26544, at *11 (S.D.N.Y. Jan. 6, 2010) (noting that a "temporal limitation" is an "indic[ium] of particularity"), it would appear to have been feasible to include such a limitation here. Doing so could have mitigated the court's concerns about the breadth of

this warrant. *See Blake*, 868 F.3d at 974 (observing that Facebook warrants "should have requested data only from the period of time during which [the defendant] was suspected of taking part in the [charged crime]").

392 F. Supp. 3d 300, 310-11 (E.D.N.Y. 2019) (citations omitted). Thus, the Court finds that "[t]he proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation." *Hamilton*, 2017 WL 1376586, at *8 (quoting *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004)).

This calculus must also accommodate the complexity of the crime under investigation. Indeed, "whether a search warrant is sufficiently particular depends in part on the nature of the crimes being investigated." *Allen*, 2018 WL 1726349, at *6 (quoting *United States v. Cooper*, 654 F.3d 1104, 1127 (10th Cir. 2011)). Thus, "[w]arrants related to complex criminal schemes may be deemed sufficient even though they are less particular than warrants pertaining to more straightforward criminal matters." *Id.* For example, the complex crime being investigated in *United States v. Allen*, "conspiracy to use a weapon of mass destruction," *id.*, required less particularity than the offense at issue in *United States v. Irving*, failure to register a social media profile as a sex offender, 347 F. Supp. 3d at 624. Ultimately, "[t]he degree of specificity required is flexible and depends on the crime involved and the types of items sought." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001) (internal quotation marks omitted).

Here, the government's investigation of defendant had been ongoing for several weeks at the time the Facebook warrants were issued. As the government notes, it was not possible at that point in the investigation to determine how long defendant had allegedly engaged in criminal conduct. Although the government was primarily investigating defendant's conduct from March of 2019, the conduct itself suggested that

defendant was part of an established and ongoing criminal scheme to sell both firearms and controlled substances. Although possession of a firearm by a user of controlled substances and possession of unregistered firearms are fairly simple offenses, distribution of controlled substances does present some complexity. Thus, the developing status of the investigation and the potentially expansive nature of the crimes being investigated gave officers some leeway in scoping the Facebook warrants here. *See Shipp*, 392 F. Supp. 3d at 310-11; *Allen*, 2018 WL 1726349, at *6; *see also United States v. Alford*, 744 Fed. App'x 650, 653 (11th Cir. 2018) (upholding a warrant to search a Google account because it "was as specific as the circumstances and nature of the activity under investigation permitted.").

The Court finds that permitting the search of defendant's entire Facebook account was broader than the probable cause on which the warrant was based. *See Galpin*, 720 F.3d at 445. The mere fact that the government could not determine when the alleged criminal conduct began does not justify a search without any temporal limitations. Some reasonable attempt could have been made to narrow the scope of this search, particularly by setting date limitations if not restrictions to specific account activities or interactions with particular persons. *See Hamilton*, 2019 WL 4455997, at *4. Such limitations need not have been strictly confined to the time frame the government was investigating given that the nature of the offense suggested established and ongoing criminal conduct. Such limitations, however, should have been reasonably tailored around that relevant time frame. *See Summage*, 481 F.3d at 1079 (noting that courts review the scope of a warrant for practical accuracy, not hypertechnical accuracy). Online activity defendant engaged in years ago—including everything from private messages to rejected friend requests to "pokes"—was not necessary to review under the circumstances here. The Court acknowledges that setting reasonable temporal limitations can be difficult and varies based on the specific facts of each case. Merely opting to review the entirety of a

defendant's social media profile, however, does little to avoid capturing private information that is highly unlikely to be relevant. Given that social media profiles often contain a wide array of personal data spanning years, some restriction here was necessary to prevent a general rummaging beyond limiting seizure to the offenses being investigated.

The primary authorities relied upon by the government are distinguishable. In *United States v. Alford*, the Eleventh Circuit Court of Appeals concluded that a warrant requiring disclosure of nearly all the data on a Google account was as limited as possible under the circumstances because officers were attempting to identify an unknown perpetrator linked to the account. 744 Fed. App'x at 653. Such ambiguity was not present here. Although the court in *United States v. Blake* did not ultimately decide whether the warrants to search the defendant's Facebook at issue were overbroad, the court did express that "the warrants should have requested data only from the period of time" relevant to the criminal conduct. 868 F.3d at 974. Further, the Ninth Circuit Court of Appeals in *United States v. Adjani* acknowledged the same privacy concerns the Court grapples with here: "We understand the heightened specificity concerns in the computer context, given the vast amount of data they can store. . . . [T]he warrant arguably might have provided for a less invasive search of [defendant's] email . . . as opposed to the wholesale search of the contents of all emails[.]" 452 F.3d 1140, 1149 (9th Cir. 2006) (internal quotation marks and original alterations omitted). The court there concluded that a more specific search was not practical under the circumstances, however, because it likely would not have "cast a sufficiently wide net to capture the evidence sought." *Id.*, at 1150. In contrast, the Court finds that the "net" cast here went beyond a reasonable approximation of the evidence sought to be discovered.

Thus, the Court **overrules** the government's objection on this issue and **adopts** Judge Roberts' R&R without modification.

### 3. Leon *Good Faith Exception*

In its objections, the government next asserts that the *Leon* good faith exception applies here even if the Facebook warrants were unconstitutionally overbroad. (Doc. 136, at 2-8). Specifically, the government argues that officers reasonably relied on Judge Roberts' finding of probable cause in approving the Facebook warrants and that no legal authority would have clearly put officers on notice that temporal limitations were necessary when searching a social media account.

In *Leon*, the Supreme Court "created the good-faith exception to the exclusionary rule." *United States v. Johnson*, 78 F.3d 1258, 1261 (8th Cir.1996) (citing *Leon*, 468 U.S. at 922). In explaining the need to create a good faith exception to the exclusionary rule, the Supreme Court reasoned that:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 921 (alteration, citation, and internal quotation marks omitted). Under *Leon*'s good-faith exception, the Fourth Amendment exclusionary rule is not to "be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid." *United States v. Taylor*, 119 F.3d 625, 629 (8th Cir. 1997) (citing *Leon*, 468 U.S. at 905, 922-23). "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916.

The Eighth Circuit Court of Appeals has outlined four circumstances when an officer's reliance on a warrant would be unreasonable: (1) the officer's affidavit included information the officer knew was false or should have known was false; (2) the affidavit is so lacking in probable cause such that the officer's reliance was objectively unreasonable; (3) the judge failed to act in a neutral and detached manner; or (4) the warrant is so facially deficient that the officer cannot reasonably presume it to be valid. *See United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (citing *Leon*, 468 U.S. at 922).

Good faith is often present despite the overbreadth of a warrant to search a social media profile. *See, e.g.*, *United States v. Flores*, 802 F.3d 1028, 1045 (9th Cir. 2015) (expressing concern over the lack of temporal limitations in a warrant to search a defendant's Facebook account, but ultimately ruling on good faith alone); *United States v. Willis-Daas*, No. 17-280 (PJS/FLN), 2018 U.S. Dist. LEXIS 35673, at *5 (D. Minn. Mar. 1, 2018) (holding that, even if the warrant to search the defendant's Facebook account was overbroad, the good faith exception applied); *Hamilton*, 2019 WL 4455997, at *6-7 (holding that a warrant to search the defendant's Facebook account within a ten-month period was overbroad but that good faith was present). This is true even when the warrant lacked any temporal limitations. *Chavez*, 2019 WL 5849895, at *9. A warrant which allows the search of a defendant's entire social media profile with no temporal limitations can, in some circumstances, lack good faith. *See Irving*, 347 F. Supp. 3d at 624-25. For example, in *Irving*, the warrant sought to gather evidence from the defendant's Facebook account of the defendant's failure to register that account but also sought to "identify investigative leads and corroborate other information obtained during the search" as stated in the warrant affidavit. *Id.*, at 625. The Court found that a reasonable officer would have perceived the warrant as general rummaging and thus the *Leon* good faith exception did not apply. *Id.*

The Court must determine whether the warrant here was so facially deficient that law enforcement officers' reliance on it was unreasonable. *See Phillips*, 88 F.3d at 586. As a result of Judge Roberts' other findings in his R&R which were not objected to and which this Court adopts, the other situations where good faith may be absent do not apply here. The Court finds that the *Leon* good faith exception applies here. The extent to which social media profiles can be searched is an evolving issue, particularly now that many people have retained such profiles for years. As discussed above, courts have differed on the limitations required by such warrants and what limitations are appropriate under the circumstances. *See Ulbricht*, 858 F.3d at 104 (holding that warrants to search the defendant's Facebook and Google accounts were constitutional because "[t]hey satisfied all three of the particularity requirements [by] list[ing] the subject offenses, describe[ing] the things to be searched, and identif[ying] the information to be seized in relation to the charged crimes."). The warrants and the supporting affidavit here show that officers were thorough in describing the profile to be searched, the information to be disclosed, the evidence to be seized, and the specific crimes they sought to investigate. (19-MJ-166, Doc. 1); (19-MJ-259, Doc. 1). Notably, the language here is narrower than the language in *Irving*. *See* 347 F. Supp. 3d at 624-25. Moreover, the crimes being investigated here are more complex and warranted a broader search to some extent. Therefore, it was reasonable for officers to believe that these warrants were sufficiently particular and thus rely on them in their investigation.

The Court finds that the purpose of the exclusionary rule, to deter police misconduct, would not be furthered by suppression here. *See Leon*, 468 U.S. at 916. Instead, suppression would serve only to punish officers for Judge Roberts' legal conclusion on an arguable question finding that the warrant was sufficiently particular without temporal limitations. *See id.*, at 921. Judge Roberts concluded that he was in error and, although the Court acknowledges this is a developing legal question, the Court

agrees. But this is distinguishable from the type of warrant that was so clearly overbroad that officers should have known it themselves and that they could not rely on the judge's assessment. Although the warrants at issue here lacked temporal limitations, the good faith of the officers is not automatically nullified. *See Flores*, 802 F.3d at 1045; *Chavez*, 2019 WL 5849895, at *9. Moreover, there are no additional aggravating aspects to the warrants or affidavit which would undermine good faith here beyond their overbreadth. *See Irving*, 347 F. Supp. 3d at 624-25. Therefore, despite the lack of temporal limitations causing the Facebook warrants to be overbroad, the *Leon* good faith exception applies and suppression is not appropriate.

Thus, the Court **sustains** the government's objection and **rejects** Judge Roberts' R&R on this issue.

### 4. Severance as a Remedy

In its objections, the government lastly asserts that even if the Facebook warrants were unconstitutionally overbroad that only "evidence that exceeded the bounds of a reasonable temporal limit should be suppressed." (Doc. 136, at 19-20). Because the Court has found that the *Leon* good faith exception applies here, it need not rule on the appropriateness of any remedy. Thus, the Court **overrules** the government's objection on this issue as moot.

## V.     CONCLUSION

For these reasons, the Court **overrules in part** and **sustains in part** the government's objections (Doc. 136), **adopts in part** and **rejects in part** Judge Roberts' R&R (Doc. 123) and **denies** both of defendant's motions to dismiss and suppress (Docs. 19 & 54).

**IT IS SO ORDERED** this 6th day of February, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa