IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 19-CR-0059-CJW |
| ) | |
| vs. ) | |
| ) | |
| RAVEN DAMIEN MEADER BURKHOW, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SENTENCING BRIEF**

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................... 2

II.  BACKGROUND ...................................................................................... 2

III. ARGUMENT ............................................................................................ 8

   A. **Defendant Was an Unlawful User of a Controlled Substance** .......... 8

   B. **Defendant Engaged in the Trafficking of Firearms** .......................... 9

   C. **Defendant Used or Possessed a Firearm in Connection with
      Another Felony Offense** ................................................................... 12

   D. **Defendant Acted as an Organizer, Leader, Manager, or
      Supervisor** ......................................................................................... 15

   E. **The Court Should Impose the Special Condition of Supervised
      Release Regarding Substance Abuse Treatment** ............................ 18

IV.  CONCLUSION ....................................................................................... 19

1

## I. INTRODUCTION

The Final PSR lists four sentencing guidelines issues and a special condition of supervised release as issues for resolution by the Court at sentencing. As explained below, the Court should (1) assess defendant with base offense level of 20 under USSG §2K2.1(a) because he was a user of a controlled substance; (2) impose a four-level enhancement under USSG §2K2.1(b)(5) because defendant engaged in the trafficking of firearms; (3) impose a four-level enhancement under USSG §2K2.1(b)(6)(B) as stipulated by the parties in the plea agreement because defendant used or possessed a firearm in connection with another felony offense; (4) impose a two-level enhancement under USSG §3B1.1(c) because defendant acted as an organizer, leader, manager, or supervisor of criminal activity; and (5) impose a special condition of supervised release requiring defendant to undergo a substance abuse evaluation and complete any recommended treatment.

## II. BACKGROUND

The United States anticipates the PSR and the evidence at the sentencing hearing will establish the following. Defendant was selling cocaine in 2018 and 2019. (PSR ¶¶ 6-7). He charged $1,600 per ounce of cocaine. *Id.* Between September 2018 and February 2019, defendant sold cocaine to an individual who later became a confidential informant ("CI") fifteen times. (PSR ¶ 7). He knew the CI was a drug dealer in that defendant knew the CI intended to distribute some or all of the cocaine to other people. *Id.* At some point between September 2018 and

2

February 26, 2019, defendant sold the CI a Glock-type "ghost gun" firearm (a firearm manufactured privately from unfinished receivers that lacks manufacturer serial numbers) with an attached silencer. *Id.* The CI paid defendant $900 for the firearm and $900 for the silencer. *Id.* Defendant sold the firearm to the CI at the same time as cocaine in a single transaction. *Id.* On February 26, 2019, officers searched premises controlled by the CI in Waterloo and found cocaine, the ghost gun, and the silencer. (PSR ¶ 8).

Law enforcement subsequently used the CI to conduct five controlled purchases of cocaine from defendant between March 12, 2019, and April 29, 2019. (PSR ¶¶ 14, 15, 16, 18, 22). All of these purchases took place in the alley behind defendant's apartment building located in downtown Cedar Rapids across the street from a convention center.[1] (PSR ¶¶ 15, 23). Defendant set the prices and the locations for these purchases. On each of these occasions, the CI used an encrypted messaging app to arrange the purchase with defendant. (PSR ¶¶ 14, 15, 16, 18, 22). Each time, the CI bought one ounce of cocaine for $1,600 from defendant using pre-serialized currency. (PSR ¶¶ 14, 15, 16, 18, 22). As part of the March 14, 2019 controlled purchase, the CI also bought another Glock-type ghost gun equipped with a silencer. (PSR ¶ 15). The silencer, a National Firearms Act ("NFA") firearm, did not have a serial number and it was not registered. *Id.*

---

[1] The United States asks the Court to take judicial notice of the location of defendant's residence within Cedar Rapids.

3

At the times of the purchases, the CI and defendant spoke about defendant's plans for firearms trafficking and the CI would check in to see if defendant had any fully automatic firearms, i.e. machineguns, for sale. (PSR ¶¶ 14, 16, 22). During the third controlled purchase on April 1, 2019, the CI told defendant the CI was having trouble collecting money. (PSR ¶ 16). Defendant indicated the CI should let the defendant know if the CI needed help collecting money because the defendant knew people "that do stuff on the side, that's as professional as it gets." *Id.* After the April 1, 2019 purchase, defendant sent the CI a message containing a picture of the defendant's hand holding a pipe bomb. (PSR ¶ 17, Gov't Exh. 1 at 16). Defendant then sent another message immediately following the picture in which the defendant wrote the following: "If you need somewhere to go boom I can make it happen btw, for a small price." (PSR ¶ 17, Gov't Exh. 1 at 16).

During this time, from November 2018 through April 2019, defendant was a member of a conspiracy to violate the NFA. (PSR ¶ 11). Other members of the conspiracy included R.M. and R.F. *Id.* Defendant and R.F. discussed, among other things, solvent traps, suppressors, milling the third hole in receivers, and possible domains for a website, which included fucktheatf.com and fuckthenfa.com. (PSR ¶ 12). Defendant selected fucktheatf.com. *Id.* Defendant directed S.M. to establish the website fucktheatf.com and it became a publically available website. (PSR ¶ 13). The background photograph on the site was that of a Bureau of Alcohol,

4

Tobacco, Firearms, and Explosives ("ATF") agent who had been shot in Waco, Texas. *Id.*

On April 23, 2019, defendant met with R.F. and R.M. in Des Moines. (PSR ¶ 19). At defendant's request, R.F. and R.M. worked on milling the lower receiver of a rifle to make it function as a machinegun. *Id.* Defendant gave R.M. four parts kits for M16s and R.M. agreed to convert AR lower receivers to fully automatic firearms in exchange for $200 per receiver. *Id.* R.M. converted two lower receivers to fully automatic and cerakoted the firearms at Creative Arms. *Id.* R.F. made baffles for and completed integrated silencers for the upper receivers for the fully automatic firearms. *Id.* On April 23, 2019, defendant sent a video of himself firing a fully automatic firearm to the CI through the encrypted app. (PSR ¶ 20). Defendant indicated that he had such firearms for sale and the CI expressed interest in purchasing one. *Id.*

On April 26, 2019, defendant met with R.F. and R.M. again in Des Moines. (PSR ¶ 21). R.M. gave defendant the completed machineguns. *Id.* Defendant asked R.M. about converting 80% AK receivers to fully automatic and gave R.M. defendant's own AK-47 as a reference rifle. *Id.* Defendant asked R.M. to take the receiver off of the rifle and replace it with an 80% receiver that was converted to be fully automatic. *Id.* Defendant also gave R.M. an additional fifteen M16 parts kits that the defendant had received from R.F. *Id.* Defendant paid R.M. $4,000 in cash for the conversion of 20 firearms to fully automatic firearms. *Id.* R.F. completed

5

five integrated silencers placed in upper receivers and gave the integrated silencers and two other silencers to the defendant. *Id.* The defendant paid R.F. $7,000 in cash. *Id.*

On April 29, 2019, law enforcement used the CI to conduct the fifth and final controlled purchase from defendant. (PSR ¶ 22). In addition to an ounce of cocaine, the CI bought an M16-type, .300 Blackout caliber firearm—a machinegun equipped with an integrated silencer—from defendant. *Id.* In the course of the transaction, defendant told the CI that the firearm he was giving the CI was a machinegun chambered in .300 blackout. *Id.* Defendant stated that he had taken similar firearms to Chicago, Compton, and Baltimore, where they would sell for a lot more money. *Id.* The CI paid $5,600 for the machinegun, the silencer, and the cocaine. *Id.* Neither the machinegun nor the silencer had serial numbers and both were unregistered NFA firearms. *Id.*

After the controlled purchase, law enforcement executed a search warrant at defendant's downtown apartment. (PSR ¶ 23). Officers located two loaded firearms on defendant's person. *Id.* Defendant's door was equipped with a loud alarm. (PSR ¶ 24). Just inside the door of the apartment, officers found several lengths of PVC pipe and an aluminum can that contained ammonium nitrate. *Id.* Officers located drug paraphernalia including bongs and rolled up dollar bills containing cocaine residue. *Id.* On the second shelf of an upper cabinet in the defendant's kitchen, officers found a plate with approximately six rocks of cocaine on it. *Id.* Next to the

plate were several rolled-up dollar bills with cocaine residue and a plastic card, used for chopping cocaine. *Id.* In the defendant's living room, officers found a bong on the floor next to the coffee table, and marijuana (which was out on a tray and ready for use), a bong that contained marijuana, and a jar containing marijuana on top of the coffee table. *Id.* Officers found another bong in defendant's bedroom. *Id.* Officers located a total of 157.44 grams of cocaine, 12.61 grams of methamphetamine (in the form of "Homer Simpson" shaped tablets), cannabidiol (CBD), and a small amount of marijuana. *Id.*

With respect to additional firearms, officers found a pipe bomb identical to the one defendant sent a picture of to the CI. *Id.* Officers also found thirteen firearms, including two machineguns equipped with integrated silencers, other silencers, and thousands of rounds of ammunition stationed throughout defendant's apartment. (PSR ¶ 25). Officers later executed a search warrant on a safe found in defendant's apartment. (PSR ¶ 27). Inside, they found gold valued at $5,522.50, $172,970 in cash, twelve assorted loaded magazines, 680.6 grams of cocaine, and four firearms, including a machinegun equipped with a silencer and a sawed-off shotgun. *Id.*

In an interview with law enforcement on April 29, 2019, defendant stated that he had begun using marijuana and then became addicted to opiates at a young age. (PSR ¶ 26). Defendant advised that opiates were his current drug of choice when he was able to get them. *Id.* Defendant stated, "I had shoulder surgery and

7

that kind of started everything again." *Id.* The defendant advised that nobody was forcing him to use drugs—he was doing drugs willingly. *Id.* During the interview, defendant also stated that he would not feel responsible if he sold a gun that was later used to commit violent crimes. *Id.*

## III. ARGUMENT

### A. Defendant Was an Unlawful User of a Controlled Substance

The PSR assesses defendant with a base offense level of 20 under USSG §2K2.1(a), in part, because defendant was an unlawful user of a controlled substance at the time of the offense. Defendant denies that he was an unlawful user of a controlled substance.

As defendant stipulated,

> In April 2018, the defendant had shoulder surgery and was prescribed opiates. Firearms purchase records, videos recovered from the defendant's cellular telephone, and social media account records document the defendant's continuous activity in purchasing and possessing firearms beginning as early as January 2016 and through the date of defendant's arrest in this case on April 29, 2019.

(PSR ¶ 35). A substantial amount of drugs and drug paraphernalia were recovered from defendant's apartment: marijuana, methamphetamine, cocaine, rolled-up dollar bills with cocaine residue, plastic cards used for chopping cocaine, and three bongs. On April 29, 2019, defendant admitted to being a user in that he said he was doing drugs willingly and that his shoulder surgery had started everything again. These statements align with his admissions to pretrial services that he used cocaine while using opiates after his shoulder surgery and his further admission to

8

probation at the time of the presentence report that he abused his prescribed pain medication after his shoulder surgery in April 2018. (Case No. 19-MJ-149, Docket 9, PSR ¶ 75). Also at the time of the pretrial services report, defendant initially said his last use of cocaine was the end of April 2019 before changing his answer. (Case No. 19-MJ-149, Docket 9). Defendant points to a clean urinalysis as evidence that he is not a drug user. That is one day out of a period of years and cocaine, in particular, does not stay in a person's system for long.

There is ample evidence of defendant's drug use in this case, including his own admissions and drug paraphernalia and drugs seized from defendant's apartment. The Court should assess defendant with a base offense level of 20 as scored by the PSR.

**B.     Defendant Engaged in the Trafficking of Firearms**

Under USSG §2K2.1(b)(5), a four-level enhancement applies if the defendant engaged in the trafficking of firearms. Application note 13 to USSG §2K2.1 states:

> Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant—
>
> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
>
> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
>
> > (I) whose possession or receipt of the firearm would be unlawful; or

(II) who intended to use or dispose of the firearm unlawfully.

The Court should impose the four-level enhancement as scored by the probation office. In *United States v. Lomax*, 910 F.3d 1068, 1069 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 2730, 204 L. Ed. 2d 1122 (2019), a confidential source informed law enforcement that the defendant in that case was trying to sell an automatic weapon and a live grenade. The source met the defendant and retrieved the automatic weapon, ammunition, and the hand grenade from the defendant's truck. *Id.* At sentencing, the district court imposed the trafficking enhancement because the defendant "had transferred two weapons to someone he knew or had reason to believe was a felon and who he had reason to believe intended to use the weapons unlawfully." *Id.*

The United States Court of Appeals for the Eighth Circuit affirmed the imposition of the enhancement. *Id.* at 1070. The court found that the facts showed that the defendant had reason to believe the source intended to use the weapon unlawfully. *Id.* As unregistered NFA firearms, the defendant's and the source's possession of the automatic weapon and the grenade was "necessarily unlawful." *Id.* (quoting *United States v. Pepper*, 747 F.3d 520, 525 (8th Cir. 2014)). This fact, combined with the clandestine nature of the sale, was sufficient to show that the

defendant had reason to believe the source, "whose mere possession of the weapons was unlawful, also intended to use the weapons unlawfully."[2] *Id.*

The Eighth Circuit also affirmed the application of the enhancement in *Pepper*, 747 F.3d at 525. In that case, the defendant transferred several firearms to his own drug dealer. *Id.* One of those firearms was an unregistered machinegun, making the drug dealer's mere possession of it unlawful. *Id.* The Eighth Circuit found that these facts supported both prongs of the enhancement. *Id.*

Accordingly, the enhancement clearly applies in this case. Defendant transferred two Glock-type ghost guns with attached, unregistered silencers and a machinegun with an integrated, unregistered silencer to the CI, a drug dealer. The three silencers and the machinegun were unregistered NFA firearms whose mere possession by both defendant and the CI was unlawful. At the same time that defendant sold these firearms to the CI, he also sold the CI cocaine. Defendant knew the CI was a drug dealer—he had previously sold the CI cocaine and knew

---

[2] Judge Kelly dissented. *Lomax*, 910 F.3d at 1070. Regarding the scope of the use prong, Judge Kelly stated that "[t]he enhancement applies if there is evidence sufficient to infer, by a preponderance, that the defendant should have known that the purchaser intended to use the firearm in connection with some other criminal activity." *Id.* at 1072. As support for this, the dissent cites *United States v. Stebbins*, 523 F. App'x 1, 5 (1st Cir. 2013), and *United States v. Freeman*, 640 F.3d 180, 189 (6th Cir. 2011), both of which involved sales, or planned sales, of firearms to drug dealers. *Lomax*, 910 F.3d at 1072.
Because defendant sold firearms to someone he knew was a drug dealer, even under the *Lomax* dissent, the enhancement applies.

11

that the CI intended to sell all or part of the cocaine the CI received. Under *Lomax* and *Pepper*, defendant thus knew or had reason to believe the CI intended to use the weapons unlawfully. The Court should impose the four-level enhancement in USSG §2K2.1(b)(5) as scored by the probation office.

### C. Defendant Used or Possessed a Firearm in Connection with Another Felony Offense

USSG 2K2.1(b)(6)(B) provides for a four-level increase if the defendant "used or possessed any firearm or ammunition in connection another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe it would be used or possessed in connection with another felony offense." "Another felony offense" "means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1, comment. (n.14(C)).

The term "another felony offense" is broad. As explained by the United States Court of Appeals for the Eighth Circuit,

> [T]he plain language of § 2K2.1(b)(6) casts a broad net . . . . Application note 14(C) narrows the scope only slightly by defining "another felony offense" to exclude "the explosive or firearms possession or trafficking offense." . . . The phrase "the . . . firearms possession . . . offense" in application note 14(C) most plainly refers to the underlying offense of conviction—in [this] case, possession of a firearm by a felon. Thus, the plain language of application note 14(C) excludes only the underlying firearms possession offense of conviction from the definition of "another felony offense."

12

*United States v. Walker*, 771 F.3d 449, 452 (8th Cir. 2014) (quoting *United States v. Jackson*, 633 F.3d 703, 705–06 (8th Cir. 2011)). However, as a limitation on the broad scope of USSG §2K2.1(b)(6)(B), the court has stated that "it would be unreasonable, and hence presumably contrary to the Commission's intent, to allow the 'additional felony' to be an offense that the defendant has to commit, in every case, in order to commit the underlying offense." *United States v. Lindquist*, 421 F.3d 751, 756 (8th Cir. 2005) (alteration omitted) (quoting *United States v. English*, 329 F.3d 615, 616–617 (8th Cir. 2003)). "In applying § 2K2.1(b)(6) when the defendant has not been convicted of another state or federal felony offense, the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm 'facilitated' that other felony." *United States v. Boman*, 873 F.3d 1035, 1043 (8th Cir. 2017) (quoting *United States v. Littrell*, 557 F.3d 616, 617 (8th Cir. 2009)).

In this case, the parties stipulated and agreed that the four-level enhancement applied. In doing so, the parties provided three potential justifications for application of the enhancement and noted those were not all-inclusive. The agreement reached by the parties was an effort to compromise on charges that would have resulted in 95 years of mandatory minimum sentences. Nonetheless, the enhancement is listed as a sentencing issue because the probation office stated that it would not have scored the enhancement but for the parties' agreement.

Based on the facts and circumstances in this case, defendant possessed a number of firearms in connection with other felony offenses. He also possessed or transferred firearms with knowledge, intent, or reason to believe that they would be used or possessed in connection with other felony offenses.

First, as the parties agreed in the plea agreement, defendant unlawfully carried or transported machineguns from Des Moines to Cedar Rapids.

Second, defendant unlawfully possessed a silencer (firearm suppressor) in connection with his unlawful transfer of a machinegun as alleged in Count 11 (the conduct of which is admitted but no plea of guilty has been entered to the offense), in violation of Iowa Code § 724.1B.

Third, defendant repeatedly and illegally possessed NFA firearms (to include machineguns and silencers, other than those involved in defendant's pleas of guilty in Counts 8, 9, and 10) with the intent to illegally transfer those firearms. This includes but is not limited to the NFA firearms transported and transferred outside of Iowa and the silencers unlawfully possessed as alleged in Counts 15-27 and 30-42.

Fourth, defendant possessed and transferred a firearm and silencer to the CI, who defendant knew was a drug dealer. In doing so, defendant used and possessed the firearm and the silencer in connection with the felonies of transferring a firearm in violation of the NFA and using and possessing a firearm in furtherance of and during and in relation to a drug trafficking crime. Based on defendant's knowledge

14

that the CI was a drug dealer, defendant also transferred the firearm and silencer with knowledge, intent, and reason to believe that both of them would be possessed in connection with another felony offense, namely violations of 18 U.S.C. § 924(c) and possession of an unregistered firearm in violation of the NFA.

Fifth, defendant possessed several firearms, including three machineguns and a number of silencers, in connection with a conspiracy to manufacture firearms in violation of the NFA. For example, defendant gave R.M. his AK-47 so R.M. could turn it into a machinegun.

Sixth, defendant possessed a pipe bomb, a NFA firearm, in connection with the solicitation to commit a violent crime.

Seventh, by defendant's own admission, he carried and sold firearms out of state. This trafficking and any out-of-state transfer activity was in violation of federal law and was not charged.

In sum, defendant possessed a number of firearm in connection with other felony offenses. The Court should impose the four-level enhancement in USSG §2K2.1(b)(6)(B) as stipulated by the parties in the plea agreement.

**D.      Defendant Acted as an Organizer, Leader, Manager, or Supervisor**

USSG § 3B1.1(c) states that a defendant's offense level should be increased by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." Application note 1 to this guideline states that, "To qualify for an adjustment under this section, the defendant must have been the organizer,

15

leader, manager, or supervisor of one or more other participants." USSG §3B1.1, comment. (n.1). Application note 4 states:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense

USSG §3B1.1, comment. (n.4).

"To justify the leadership enhancement, a defendant need only have managed or supervised at least one other participant in the criminal conspiracy." *United States v. Bewig*, 354 F.3d 731, 738 (8th Cir. 2003). "[T]he enhancement may apply even if the management activity was limited to a single transaction." *Id.* (quoting *United States v. Garrison*, 168 F.3d 1089, 1096 (8th Cir. 1999)).

The un-objected-to portions of the PSR and the stipulations from defendant's plea agreement establish that defendant acted as an organizer, leader, manager, or supervisor in criminal activity. "At the defendant's request, [R.F. and R.M.] worked on milling the lower receiver of a rifle to make it function as a fully automatic firearm." (PSR ¶ 19).

> The defendant asked [R.M.] about converting 80% AK receivers to fully automatic and gave [R.M.] an AK-47 (his ROMARM/CUGIR, Model WASR-10, 7.62x39mm rifle) as a reference rifle." (PSR ¶ 21). The defendant asked [R.M.] to take the receiver off of the rifle and replace it with an 80% receiver that was converted to be fully automatic. The

16

> defendant also gave [R.M.] an additional fifteen M16 parts kits that
> the defendant had received from [R.F.]. The defendant paid [R.M.]
> $4,000 in cash for the conversion of 20 firearms to fully automatic
> firearms.

(PSR ¶ 20). Notably, defendant only paid $200 per firearm for the conversion of firearms into machineguns. Yet, he sold the completed machinegun with a silencer for $5,600. Less the price defendant charged for a silencer, $900, and the $200 defendant paid R.M., defendant made $4,500 from that one sale, all of which he intended to keep for himself or funnel back into his drug and firearms trafficking operation. Defendant exercised decision-making power in the firearms manufacturing conspiracy and exerted control and authority over the actions of R.F. and R.M. Defendant placed orders with R.M. and R.F., told them what he wanted, and paid for the materials and services they rendered to him. The manufacturing of the NFA firearms to defendant's specifications could not have occurred but for defendant initiating the transactions, directing the type of weapons to be made, and setting the prices he would pay for them. Additionally, defendant was the only person who knew the extent of the operation—there is no evidence that R.F. and R.M. knew of how defendant was using or disposing of the silencers and machineguns. Nor is there any evidence that either of them knew defendant was a drug dealer.

Because defendant acted as an organizer, leader, manager, or supervisor of criminal activity, the Court should impose the two-level enhancement under USSG §3B1.1(c).

### E. The Court Should Impose the Special Condition of Supervised Release Regarding Substance Abuse Treatment

The probation office recommends that the Court impose a special condition of supervision requiring defendant to undergo a substance abuse evaluation, complete any recommended treatment, and participate in a program of substance abuse testing. The Court has broad discretion in imposing conditions of supervised release. *United States v. Moore*, 860 F.3d 1076, 1078 (8th Cir. 2017). As the Eighth Circuit Court of Appeals has further noted:

> Under § 3583(d), special conditions "must be reasonably related to four factors: the nature and circumstances of the offense and the history and characteristics of the defendant, the need to afford adequate deterrence to criminal conduct, the need to protect the public from future crimes of the defendant, and the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *United States v. Harris*, 794 F.3d 885, 888–89 (8th Cir. 2015) (internal quotation marks omitted). "The special condition need not be related to all four factors; instead, the factors are weighed independently." *Hart*, 829 F.3d at 609. Additionally, a special condition can "involve[ ] no greater deprivation of liberty than is reasonably necessary," and must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(2)–(3).

*Id.* A supervised release condition will be upheld where the basis for the special condition can be discerned from the record." *United States v. Thompson*, 888 F.3d 347, 351 (8th Cir. 2018).

Here, as discussed above, there is substantial evidence of defendant's drug use. Accordingly, the basis for the condition is easily discernable from the record, and the Court should impose the condition as recommended by the probation office.

## IV. CONCLUSION

For the forgoing reasons, the United States contends the Court should calculate the sentencing guidelines range as follows:

| | |
|---|---|
| Base Offense Level<br>USSG §2K2.1(a)(4) | 20 |
| Number of Firearms<br>USSG §2K2.1(b)(1)(C) | +6 |
| Destructive Device<br>USSG §2K2.1(b)(3)(B) | +2 |
| Trafficking of Firearms<br>USSG §2K2.1(b)(5) | +4 |
| In Connection w/ Felony<br>USSG §2K2.1(b)(6)(B) | +4 |
| Money Laundering<br>USSG §1B1.2(c) | +2 |
| Role in the Offense<br>USSG §3B1.1(c) | +2 |
| **Adjusted Offense Level** | **40** |
| Acceptance of Responsibility<br>USSG §3E1.1 | -3 |
| **Total Offense Level** | **37** |

In the event the Court does not apply the guidelines as outlined above, the United States may seek an upward departure or an upward variance for the purpose of arriving at a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

    Respectfully submitted,

    PETER E. DEEGAN, JR.
    United States Attorney

    By:

CERTIFICATE OF SERVICE
I hereby certify that on October 30, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the parties or attorneys of record.
UNITED STATES ATTORNEY
BY: /s KAL_____

/s/ *Kyndra Lundquist*
KYNDRA LUNDQUIST

and

/s/ *Richard L. Murphy*
RICHARD L. MURPHY

Assistant United States Attorneys
111 7th Avenue SE, Box 1
Cedar Rapids, IA  52401-2101
319-363-6333
319-363-1990 – Fax