**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | No. 19-CR-59-CJW-MAR |
| Plaintiff, | | |
| vs. | | **ORDER** |
| RAVEN DAMIEN MEADER BURKHOW, | | |
| Defendant. | | |

_____

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................... 3

II. RELEVANT BACKGROUND ...................................................... 3

   A.  Defendant's Criminal Case and Plea Agreement ............................ 3

   B.  Defendant's Motion for Return of Seized Property (Doc. 185) ............. 6

   C.  Government's First Resistance (Doc. 189) and
       Administrative Forfeiture ............................................... 8

   D.  Defendant's Motion to Set Aside Declaration of
       Administrative Forfeiture (Doc. 190)....................................10

   E.  Defendant's Motion to Enforce Mandatory Claim-Processing Rule
       (Doc. 191); Government's Second Resistance (Doc. 195);
       Judge Roberts' Denial and R&R (Docs. 197 & 198);
       Defendant's Reply Brief (Doc. 199) .....................................11

   F.  Parties' Objections to Judge Roberts' R&R (Docs. 200 & 201) ...........14

G.     Defendant's Motion for Reconsideration (Doc. 202) ........................17

III.    DISCUSSION ................................................................................17

A.     Defendant's Motion for Reconsideration (Doc. 202) ........................17

B.     De Novo Review Notwithstanding Judge Roberts' R&R....................19

C.     Defendant Lacks Standing to Seek Return of Property ......................20

IV.    CONCLUSION ..............................................................................24

# I.    INTRODUCTION

This matter is before the Court on a Report and Recommendation ("R&R"), (Doc. 198), by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending the Court deny defendant's "Motion for Return of Seized Property (Fed. R. Crim. P. 41(g))," (Doc. 185), and "Motion to Set Aside Declaration of Administrative Forfeiture (18 U.S.C. § 983(e))," (Doc. 190). This matter is also before the Court on defendant's "Motion for Reconsideration Re Order at Dkt. 197." (Doc. 202).

Defendant's motions (Docs. 185, 190, 202) are directed toward his effort to compel the government to return certain property seized by law enforcement officers in 2019 in connection with prosecuting defendant for various crimes. To address defendant's motions, the Court will begin with the relevant background of this case. Then, the Court will address defendant's Motion for Reconsideration, (Doc. 202), because the Court's ruling on that motion will frame the Court's subsequent discussion of his other two motions, the R&R on those motions, and the parties' objections to the R&R.

# II.    RELEVANT BACKGROUND

## A.    Defendant's Criminal Case and Plea Agreement

On September 25, 2019, a grand jury returned a Second Superseding Indictment charging defendant with forty-two counts of various crimes involving controlled substances and firearms. (Doc. 28). The Second Superseding Indictment contained three forfeiture allegations seeking criminal forfeiture. Forfeiture Allegation 1 included the following items of property:

(1)    approximately $840 seized from defendant's person by law enforcement on or about April 29, 2019;

(2)    approximately $3910 seized from defendant's residence by law enforcement on or about April 29, 2019;

(3)     six gold bars, or pieces, valued at approximately $5,522.50 seized from defendant's safe by law enforcement on or about May 2, 2019; and

(4)     approximately $172,970 seized by law enforcement from defendant's safe on or about May 2, 2019.

(*Id.*, at 13). Forfeiture Allegations 2 and 3 included numerous firearms and ammunition which were allegedly involved in defendant's commission of certain offenses. (*Id.*, at 14).

On January 17, 2020, defendant pleaded guilty to Counts 1, 8, 9, 10, 12, and 29 of the Second Superseding Indictment, under the terms of a written plea agreement with the government. (Doc. 130). Relevant here, paragraph 43 of the parties' plea agreement provides as follows:

Defendant agrees to forfeit and abandon any and all claim to items seized by law enforcement from defendant at the time of any arrest or search, including defendant's arrest and the search of defendant's vehicle, residence, person, and safe on April 29, 2019, and May 2, 2019. Defendant also waives any right to additional notice of the forfeiture and abandonment of such property. Defendant stipulates this plea agreement constitutes notice under Local Criminal Rule 57B(f) regarding the disposal of any exhibits or evidence related to this matter. Defendant understands that, from this date forward, any local, state, or federal law enforcement agency may take custody of and use, dispose of, and transfer these items in any way the agency deems appropriate.

(Doc. 131, at 26).

Paragraph 44 of the parties' plea agreement further provides, in relevant part, as follows:

Defendant agrees to voluntarily disclose, forfeit, abandon, give up, and give away to the United States, or any law enforcement agency designated by the United States, prior to the date of sentencing herein, any right, title and interest defendant may have in property subject to forfeiture under the United States Code, including 26 U.S.C. § 5872, 21 U.S.C. §§ 853 and 881, and 18 U.S.C. §§ 924, 981 and 982, and any right, title and interest defendant may have in the following items:

4

. . .

D.      all monies, negotiable instruments, securities, or other things of value, furnished or intended to be furnished by any person in exchange for a controlled substance in violation of federal drug laws, and all proceeds traceable to such an exchange, and all monies, negotiable instruments, and securities used or intended to be used to facilitate any violation of federal drug laws;

. . .

H.      all firearms, ammunition, destructive devices, silencers, weapons modification kits, and gunpowder seized on April 29, 2019, May 2, 2019, and May 15, 2019.  This specifically includes, but is not limited to, the following: a Glock-type, 9mm Luger caliber semiautomatic pistol equipped with a silencer; an M16-type, .300 Blackout caliber firearm, identified as ATF Exhibit 11; a Glock Unknown Model, 9x19mm caliber pistol; a Sig Sauer P365, 9mm Luger caliber pistol; a Remington 870 Tac-14 Hardwood, 12 gauge firearm; a Mossberg 930, 12 gauge shotgun; a PW Arms Izhevsk Mosin-Nagant M91/30, 7.62x54R caliber rifle; an M16-type, .300 Blackout caliber firearm, identified as ATF Exhibit 51; a Sig Sauer P320, 9mm Luger caliber pistol; a Smith & Wesson M&P 15, 5.56mm caliber rifle equipped with a silencer; an M16-type, .300 Blackout caliber firearm, identified as ATF Exhibit 79; a Ruger SR22, .22LR caliber pistol equipped with a silencer; a IWI Galil Ace SAR, 7.62x39mm caliber rifle; Creative Arms LLC CAAR, Multi caliber rifle; a Armscor Precision Rock Island Armory M1911-Al-FS, .45 ACP caliber pistol equipped with a silencer; Kahr Arms CW45, .45 ACP caliber pistol; a Charter Arms Undercover, .38 Spl. caliber revolver; a Kel-Tec Sub-2000, 9x19mm caliber rifle equipped with a silencer; a RPB Industries SAP MlO, .45 Auto caliber pistol, which was equipped with a silencer; a Savage Arms Ranger, 12 gauge weapon made from a shotgun, which, as modified, had an overall length of less than 26 inches and barrels of less than 18 inches; a FN Herstal SCAR 178, 7.62x51mm caliber rifle; a Mossberg, Model Maverick, 30-06 rifle; a ROMARM/CUGIR, Model WASR-10, 7.62x39mm rifle, thirteen silencers identified as ATF Exhibits 13, 14, 15, 49, 50, 51A, 63, 79A, 91, 92, 103, 131, and 133; and seventeen M16 parts kits.

(*Id.*, at 26–28). Defendant also agreed "not to contest any forfeiture action or proceeding brought on behalf of any government agency involved in this investigation that seeks to forfeit property described in the above paragraphs. (*Id.*, at 29, ¶ 48). Defendant initialed all these paragraphs. (*Id.*, at 26–29). At the plea hearing, Judge Roberts confirmed with defendant that he had initialed the paragraphs in the plea agreement to indicate that he read, understood, and agreed to the terms of each paragraph. (Doc. 196, at 24).

On January 17, 2020, Judge Roberts issued a Report and Recommendation that defendant's guilty plea be accepted. (Doc. 132). Judge Roberts found that the government "had established the requisite nexus between Defendant's offense and the items described in the Second Superseding Indictment's forfeiture allegation and including but not limited to items listed in paragraph 44 of the plea agreement." (*Id.*, at 7). Judge Roberts also recommended the Court enter a preliminary forfeiture order under Federal Rule of Criminal Procedure 32.2(b)(2). (*Id.*, at 7–8). Defendant waived objection to the Report and Recommendation, and on January 21, 2020, the Court accepted the Report and Recommendation and accepted defendant's guilty plea. (Docs. 133 & 134). The Court did not enter a preliminary forfeiture order. On November 6, 2020, the Court sentenced defendant. (Doc. 163). The Court did not address forfeiture at sentencing or enter further orders relating to forfeiture.

### B. Defendant's Motion for Return of Seized Property (Doc. 185)

On January 23, 2025, the Clerk of Court filed defendant's pro se Motion for Return of Seized Property. (Doc. 185). In this motion, defendant alleges that on April 29, 2019, when law enforcement officers raided his residence, they seized the following items of property:

- an iPhone
- approximately $840 seized from [defendant]'s person;
- approximately $3,910 seized from [defendant]'s residence;

6

- approximately $172,970 seized from [defendant]'s safe; and

- six gold bars, or pieces, valued at about $5,522.50.

(*Id.*, at 2). Defendant also lists a collection of fifteen firearms seized by law enforcement officers, from among the twenty-three firearms identified in the plea agreement above, and he describes those fifteen firearms as his "lawfully-owned firearms." (*Id.*).

Defendant's motion urges the Court to order the government to return all the above-listed property—including the iPhone, the currency, the gold bars, and the fifteen firearms—to defendant's designee; and "to the extent that any lawfully-owned firearms and ammunition seized during th[e] search cannot be returned to [his] designee, [defendant] requests an order directing the Government to transfer any lawfully-owned firearms and ammunition to a licensed [federal firearms licensee] to be sold with proceeds from the sale to return to [him]." (*Id.*, at 1).

Defendant brought his Motion for Return of Seized Property under Federal Rule of Criminal Procedure 41(g), asserting the following: that the Court has equitable jurisdiction to decide his motion; that his motion should be treated as a civil action for equitable relief because criminal proceedings have concluded; that the generic six-year statute of limitations for civil actions applies to his case, *see* 28 U.S.C. § 2401(a); and that since he brought his motion within six years of his conviction, it is timely. (Doc. 185, at 4).

Defendant acknowledges in his Motion for Return of Seized Property that the Second Superseding Indictment identified the above-listed property in its forfeiture allegations.[1] (*Id.*, at 2). He states that he did not know "whether the Government attempted to initiate civil or administrative forfeiture of the property at issue." (*Id.*). He also states that he "cannot recall the exact details" of the plea agreement and "cannot

---

[1] The Court notes that the Second Superseding Indictment did not include a specific forfeiture allegation relating to a cell phone. (*See* Doc. 28, at 13–14).

recall if it dealt with forfeiture or abandonment of property or contained a waiver provision regarding a motion for return of property." (*Id.*, at 3).

### C. Government's First Resistance (Doc. 189) and Administrative Forfeiture

On March 17, 2025, the government filed a resistance to defendant's Motion for Return of Seized Property. (Doc. 189). In its resistance, the government asserted that in 2019, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") commenced administrative forfeiture proceedings under Title 18, United States Code, Section 983 with respect to much of the property defendant now seeks. (*Id.*, at 3–4). Attached to the government's resistance as Exhibit 1 was a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings," which is addressed to defendant at the Linn County Jail.[2] (Doc. 189-1). This notice describes the procedures to contest forfeiture and lists the items subject to forfeiture. This list of items includes nineteen firearms, assorted ammunition, $172,970.00 in U.S. Currency, $3,910.00 in U.S. Currency, and "6 Pieces of Gold" valued at $5,522.50. (*Id.*, at 3–4). In the government's resistance, it notes the following:

> [Defendant's Motion for Return of Seized Property] describes 15 firearms that Defendant refers to as "lawfully-owned f[i]rearms" in his motion. The list provided to Defendant by ATF contained a list of more than 15 firearms and included several that are listed as unknown. It is not clear from Defendant's motion whether item 5 or item 10 are listed in the notice. In addition, the United States did not do an administrative forfeiture on either the cell phone or the "$840 seized from Burkhow's person." However, the forfeiture portion of the plea agreement referenced all the firearms listed in the motion, noted the $840 Defendant agreed were drug proceeds and all

---

[2] Government's Exhibit 1 did not include a copy of the shipping information associated with this notice, and thus it was unclear when the notice was sent to and received by Linn County Jail based on this exhibit alone. As will be discussed, additional pleadings filed by the government reveal that this notice was sent to the Linn County Jail on July 25, 2019, and delivered on July 30, 2019. (Government's Exhibit 8) (Doc. 195-3, at 1–2). Thus, the notice was delivered to the Linn County Jail approximately eighty-seven days after the April 29, 2019 search and seizure.

8

property seized on April 29, 2019, and May 2, 2019, which would have
included the cell phone, were forfeited to the United States.

(Doc. 189, at 4 n.1).

The government also attached to its resistance as Exhibit 2 another notice of
forfeiture proceedings, which is addressed to defendant's home address and is otherwise
virtually identical in substance to Exhibit 1. (Doc. 189-2). Unlike with Exhibit 1,
however, the government included with Exhibit 2 the shipping information associated
with this notice, which shows that this notice was sent via FedEx to defendant's residence
address on May 22, 2019. (*Id.*, at 8).

The government also attached to its resistance Exhibits 3, 4, and 5, which are
three respective Declarations of Administrative Forfeiture issued by the ATF, each dated
October 21, 2019. (Docs. 189-3; 189-4; 189-5). Each of the Declarations respectively
states that the properties described therein were seized on April 29, 2019, and that "notice
of the seizure and intent to forfeit was published for thirty (30) consecutive days on the
official government web site (www.forfeiture.gov) from May 27, 2019 to June 25, 2019
and was sent to each party who appeared to have an interest" in the properties. (*Id.*).
The first Declaration of Administrative Forfeiture lists the nineteen firearms, the assorted
ammunition, and the "6 Pieces of Gold" identified in the notices; the second lists
$172,970.00 in U.S. Currency; and the third lists $3,910.00 in U.S. Currency. (*Id.*).
Just as the government noted with respect to the notices sent to defendant, the
Declarations of Administrative Forfeiture likewise apparently do not include a cell phone
or $840; and the nineteen firearms listed do not precisely match up with the fifteen
firearms defendant refers to as "lawfully-owned firearms."

In its resistance, the government argued that defendant's Motion for Return of
Seized Property under Rule 41(g) fails because the property was administratively
forfeited, and the exclusive remedy to set aside a declaration of administrative forfeiture
is under Title 18, United States Code, Section 983(e). (Doc. 189, at 6). The statutory

limitation period for challenging any non-judicial civil forfeiture proceeding is five years from the date of final publication of the notice of seizure of the property—here, June 25, 2019—and thus the government argued defendant's motion—which he mailed on January 10, 2025—should be denied as untimely. (*Id.*, at 7 (citing 18 U.S.C. § 983(e)(3)). Alternatively, the government argued that defendant's Motion for Return of Seized Property should be denied because by executing the plea agreement, defendant waived any right he had to the property he now seeks. (*Id.*, at 12–13).

### D.    *Defendant's Motion to Set Aside Declaration of Administrative Forfeiture (Doc. 190)*

On April 1, 2025, the Clerk of Court docketed defendant's pro se Motion to Set Aside Declaration of Administrative Forfeiture. (Doc. 190). With this motion, defendant attacks the arguments the government raised in its resistance to his prior Motion for Return of Seized Property—i.e., that defendant cannot have the property returned due to (1) the completed administrative forfeiture and, alternatively, (2) the plea agreement. Defendant explains that when he filed his prior Motion for Return of Seized Property (Doc. 185), he did not know whether the government had commenced administrative forfeiture proceedings. (Doc. 190, at 2). Defendant argues that with respect to the government's resistance and its assertion of those administrative forfeiture proceedings, the government "failed to provide adequate proof that it attempted 1) to publish notice and 2) serve the required personal written notice in a manner reasonably calculated to reach [defendant]." (*Id.*, at 1).

Defendant asserts the government "knew [he] was incarcerated at the Linn County Jail during the relevant time," and that the government failed to provide any evidence in its resistance to show *when*, if ever, the notice of administrative forfeiture addressed to defendant at the jail (Exhibit 1) was sent to or received by the jail. (*Id.*, at 3, 5–6). Defendant further asserts that the other notice of administrative forfeiture sent to defendant's residence (Exhibit 2) is irrelevant because the government knew he was

already incarcerated and not at his residence. (*Id.*, at 6). Defendant raises other critiques of the government's attempt to personally notify him, and he asserts that the government also failed to provide evidence that it ever "published notice of the impending forfeiture action in accordance with 28 C.F.R. § 8.9(a) and 18 U.S.C. § 1607(a)."[3] (*Id.*, at 3, 5–9).

As for the government's assertion that the terms of the plea agreement independently bar defendant's attempt to recover any property, defendant first explains that he "cannot confirm or deny the existence or accuracy of any of these alleged provisions as the Plea Agreement remains under seal (despite [his] repeated efforts to unseal and otherwise obtain a copy)," and the government did not attach a copy to its resistance. (*Id.*, at 4). Defendant argues, nevertheless, that "[t]he waiver, abandonment, and assignment-of-property provisions in the Plea Agreement are unenforceable and void since they violate public policy and the Constitution on separation-of-powers grounds." (*Id.*, at 2, 10–14). Finally, defendant argues that the government cannot perfect its title to any property through the instant proceedings. (*Id.*, at 15).

### E. Defendant's Motion to Enforce Mandatory Claim-Processing Rule (Doc. 191); Government's Second Resistance (Doc. 195); Judge Roberts' Denial and R&R (Docs. 197 & 198); Defendant's Reply Brief (Doc. 199)

On May 6, 2025, the Clerk of Court docketed defendant's pro se Motion to Enforce Mandatory Claim-Processing Rule. (Doc. 191). In that motion, defendant argued that because the government did not file a resistance to his Motion to Set Aside Declaration of Administrative Forfeiture (Doc. 190) within fourteen days, as required by Local Rule 7(e), the Court should deem that motion conceded by the government and grant it on that basis. Judge Roberts ordered the government to respond to defendant's

---

[3] The Court suspects defendant's reference to "18 U.S.C. § 1607(a)" is a clerical error, which should instead be "19 U.S.C. § 1607(a)."

motions at Doc. 190 and 191, (Doc. 192), and the government did so by filing a combined resistance to both motions on June 10, 2025. (Doc. 195).

The government's resistance argued, first, that the Court should deny defendant's Motion to Enforce Mandatory Claim-Processing Rule because under the Court's Public Administrative Order No. 19-AO-0003-P (dated April 10, 2019), the government had no obligation to respond to defendant's motion at Doc. 190, unless and until ordered by the Court, since defendant's motion was a pro se motion after judgment. (Doc. 195, at 3–4). Next, the government argued that the Court should deny defendant's Motion to Set Aside Declaration of Administrative Forfeiture for several reasons: first, his motion is time-barred; second, defendant "is ineligible to seek relief because the government took reasonable steps to provide him with notice and because he knew and had reason to know of the seizure of his property within sufficient time to file a timely claim;" and finally, the plea agreement independently bars defendant from seeking return of the property because he voluntarily forfeited all rights therein and waived all claims pertaining thereto. (*Id.*, at 4–11).

To support the government's arguments, and to address defendant's allegations of evidentiary defects in the government's first resistance at Doc. 189, the government also attached Exhibits 6, 7, and 8 to its resistance. Exhibit 6 consists of documentation verifying that the Declarations of Administrative Forfeiture were supported by publication on the official government website from May 27, 2019, to June 25, 2019. (Doc. 195-1). Exhibit 7 is a transcript of defendant's plea hearing before Judge Roberts. (Doc. 195-2). Exhibit 8 contains FedEx shipping information associated with the "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" addressed to defendant at the Linn County Jail (i.e., government's Exhibit 1), which shows that this notice was sent via FedEx to the jail on July 25, 2019, and delivered and signed for on

12

July 30, 2019. (Doc. 195-3, at 1–2). The FedEx shipping information states, "Signed for by: J. MATHAN" and "Delivered to: Guard/Security Station." (*Id.*, at 2).[4]

On June 17, 2025, Judge Roberts denied defendant's Motion to Enforce Mandatory Claim-Processing Rule. (Doc. 197). Judge Roberts explained that under the Court's Public Administrative Order No. 19-AO-0003-P (dated April 10, 2019), the government had no obligation to respond to defendant's motion at Doc. 190, unless and until ordered by the Court, because defendant's motion was a pro se motion after judgment. (*Id.*, at 2).

On June 23, 2025, Judge Roberts issued his R&R, (Doc. 198), recommending the Court deny defendant's Motion for Return of Seized Property, (Doc. 185), and defendant's Motion to Set Aside Declaration of Administrative Forfeiture, (Doc. 190). Judge Roberts concluded that Rule 41(g) was not the proper remedy to set aside administrative forfeiture, and that defendant's efforts to set aside the Declarations of Administrative Forfeiture under Section 983(e) were time barred because, as Judge Roberts found, the five-year limitations period for challenging those proceedings expired June 25, 2024. (Doc. 198, at 9). Judge Roberts further concluded that "even if the motion was timely, Defendant has not established any basis for setting aside the administrative forfeiture under Section 983(e)" because, as Judge Roberts found, the government's efforts to notify defendant were reasonably calculated to provide actual notice of the forfeiture and, moreover, "Defendant not only knew of the seizure of the items because of his presence at the execution of the warrants, he also knew of the seizure *and the Government's intent to forfeit the property* when he signed the plea agreement on January 9, 2020." (*Id.*, at 9–10) (emphasis in original). Thus, in essence, Judge Roberts

---

[4] Exhibit 8 also shows that the other "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" which was sent to defendant's home address on May 22, 2019 (i.e., government's Exhibit 2), was returned as undeliverable to the ATF mail room on May 30, 2019. (Doc. 195-3, at 3).

concluded that the completion of the administrative forfeiture proceedings barred defendant's attempts to obtain any property. Judge Roberts did not address the fact (previously noted by the government) that some of the items defendant seeks were never covered by the administrative forfeiture proceedings—namely the iPhone, $840 in cash, and possibly certain firearms.

On July 1, 2025, the Clerk of Court docketed defendant's "Reply to Government's Resistance at Dkt. 195." (Doc. 199). Defendant's filing is a reply brief directed to the government's resistance at Doc. 195 (which resisted both his Motion to Set Aside Declaration of Administrative Forfeiture and his Motion to Enforce Mandatory Claim Processing Rule). Defendant argues in his reply brief that the Court's Public Administrative Order No. 19-AO-0003-P is "invalid and could not serve as a legitimate basis for the Government to not respond to [defendant's] [Motion to Set Aside Declaration of Administrative Forfeiture] within 14 days as required by Local Rule 7(e)." (*Id.*, at 3). Defendant also argues that "[t]he administrative forfeiture proceeding was made void by the Government's untimely service of written notice on [him]" because under Title 18, United States Code, Section 983(a)(1)(A)(i), the government had sixty days after the seizure of property to notify him of the administrative forfeiture proceeding, and the shipping information in government's Exhibit 8 revealed that the government did not send notice to him at the Linn County Jail until more than eighty days had elapsed after the initial seizure, thus voiding the administrative forfeiture proceedings. (*Id.*, at 3–5). Defendant further argues that the government "ignores contrary authority regarding § 983(e)(1)(B)," and that the government "still has not proven the Court ordered forfeiture as part of [his] sentence." (*Id.*, at 5–7).

### F.   *Parties' Objections to Judge Roberts' R&R (Docs. 200 & 201)*

On July 7, 2025, the government filed its objections to Judge Roberts' R&R. (Doc. 200). The government objects to Judge Roberts' stating that "the Government is not arguing . . . that [defendant] forfeited his interest in the property merely by executing

the plea agreement without the Court ordering forfeiture as part of his sentence." (*Id.*, at 2); (Doc. 198, at 8). The government explains that this is indeed what it is arguing, as the government has maintained throughout these proceedings, in its resistances to defendant's motions, that "defendant's plea agreement, *standing alone*, bars his claim for return of any property," and the government contends that Judge Roberts should have agreed with this alternate basis for denying defendant's motions. (Doc. 200, at 3) (emphasis in original). The government again points out that "the $840 in currency and the iphone were not forfeited administratively," (*id.*, at 4)—the implication here being that the plea agreement must, then, serve as the *sole basis* for denying defendant's motions for return of property *at least as to these items*.

On July 15, 2025, the Clerk of Court docketed defendant's pro se objections to Judge Roberts' R&R, by which defendant raises a variety of objections to Judge Roberts' factual findings and legal conclusions. (Doc. 201). First, defendant asserts the following:

> [The R&R] falsely claims that the notice sent to Linn County Jail and the notice sent to [defendant's] residence were sent on "the same date." Dkt. 198 at 2. Actually, the residence notice was sent on May 22, 2019 (Dkt. 189-2 at 8), while the Jail notice was sent on July 25, 2019 (Dkt. 195-3 at 2). Further, the R&R falsely states that the Jail notice was "signed for on July 25, 2019, (Dkt. 198 at 2), but was actually signed for on July 30, 2019. Dkt. 195-3, at 2.

> These dates are important as, explained below, they show that the Government sent notice to [defendant] in the Linn County Jail over 60 days after the seizure of his property on April 29 and May 2, 2019. This violated 18 U.S.C. § 983(a)(1)(A)(i)'s 60-day notice requirement.

(Doc. 201, at 1–2).

Next, defendant objects to Judge Roberts' failure to consider his reply brief at Doc. 199 which raised, among other things, his argument concerning the government's violation of the sixty-day notice deadline which purportedly voided the administrative forfeiture proceedings. (*Id.*, at 2). By extension, defendant argues, the R&R incorrectly

concluded that his claim is time barred and that he received adequate notice of the administrative forfeiture proceedings. (*Id.*, at 2–4). Defendant contends that "the 60-day-notice violation rendered the Government's administrative forfeiture void and terminated prior to declaration of forfeiture," and because "§ 983(a)(1)(F) required cessation and return of the property as a matter of statutory right, [defendant] was not obligated to file a § 983(e) motion to seek return of his property as it was (and remains) the Government's duty to return the property regardless of [defendant's] knowledge of the seizure." (*Id.*, at 4). "That said," defendant continues, "Rule 41(g) may still be a proper way to seek return of the property under these circumstances." (*Id.*).

Defendant also assets that Judge Roberts failed to engage with defendant's argument based on a "precedential" First Circuit opinion and failed to "weigh the relative merits between the First Circuit's approach on this issue and the non-precedential and unreported decisions of the Sixth Circuit and a single district court that took stricter views on § 983(e)(1)(B)'s language." (*Id.*, at 4–5).[5] Defendant also objects to Judge Roberts' finding that defendant "knew of the seizure of the items because of his presence at the execution of the warrants," for defendant asserts he was already in custody during the execution of these warrants and thus did not have such knowledge. (*Id.*, at 5). Defendant further objects to Judge Roberts' finding that defendant "knew of the seizure *and the Government's intent to forfeit the property* when he signed the plea agreement on January 9, 2020," because, according to defendant, at the time he signed the plea agreement, he did not have notice of the seizure "within sufficient time to file a timely claim" to set aside the declaration of forfeiture, since that notice was conveyed "in a document asking him to waive any right to contest the seizure of said property," which defendant describes

---

[5] The Court notes that defendant's objection here is erroneous on its face to the extent it is premised on defendant's suggestion that First Circuit authority is "precedential" in the sense that it binds this Court, which sits in the Eighth Circuit. First Circuit authority does not bind this Court.

as "Kafkaesque." (*Id.*, at 5–6) (citing 18 U.S.C. § 983(e)(1)(B)). Finally, defendant contends that the R&R "does not engage with [defendant's] arguments regarding the invalidity of certain provisions of the plea agreement on constitutional and public-policy grounds." (*Id.*, at 6).

### G. Defendant's Motion for Reconsideration (Doc. 202)

On July 15, 2025, the Clerk of Court filed defendant's pro se Motion for Reconsideration Re Order At Dkt. 197. (Doc. 202). With this motion, defendant urges the Court to reconsider Judge Roberts' order, (Doc. 197), denying defendant's Motion to Enforce Mandatory Claim-Processing Rule, (Doc. 191). Defendant's motion reads, in its entirety, as follows:

> [Defendant] respectfully asks this Court to reconsider its Order at Docket 197 for the following reasons:
>
> 1. As of this writing, [defendant] has yet to receive a copy of the Government's Resistance (Dkt. 195) from either the Government or Court. Burkhow Decl. at par. 2. [Defendant] had to rely on a fellow inmate to obtain the Government's Resistance. *Id.*
>
> 2. Since [defendant] has yet to be served a copy of the Government's Resistance, the time for filing a Reply has not yet expired (or accrued). L.R. 7(g).
>
> 3. [Defendant's] Reply (Dkt. 199) was filed on July 1, 2025. It was timely.
>
> 4. Under these circumstances, it is procedurally unfair—indeed, a denial of due process—for this Court not to consider [defendant's] Reply and issue a new Order in light of what is addressed in his Reply.

(Doc. 202).

## III. DISCUSSION

### A. Defendant's Motion for Reconsideration (Doc. 202)

In the interest of completeness, the Court **grants** defendant's motion for reconsideration (Doc. 202) of Judge Roberts' order (Doc. 197) denying defendant's

Motion to Enforce Mandatory Claim-Processing Rule (Doc. 191). The Court will reconsider defendant's Motion to Enforce Mandatory Claim-Processing Rule with the benefit of the arguments he raised in his reply brief at Doc. 199 to the extent they pertain to his Motion to Enforce Mandatory Claim-Processing Rule at Doc. 191.[6] Upon so doing, the Court **denies** defendant's Motion to Enforce Mandatory Claim-Processing Rule. (Doc. 191).

As described above, defendant argues that because the government did not file a resistance to his Motion to Set Aside Declaration of Administrative Forfeiture (Doc. 190) within fourteen days, as required by Local Rule 7(e), the Court should deem that motion conceded by the government and grant it on that basis. (Doc. 191, at 1). As Judge Roberts explained, the Court likewise concludes that under the Court's Public Administrative Order No. 19-AO-0003-P (dated April 10, 2019), the government had no obligation to respond to defendant's motion at Doc. 190, unless and until ordered by the Court, because defendant's motion was a pro se motion after judgment.

Defendant contends in his reply brief, however, that the Court's Public Administrative Order No. 19-AO-0003-P conflicts with Local Rule 7(e), which provides that "[e]ach party resisting a motion must, within 14 days after the motion is served, file a resistance," and this Local Rule speaks of no exceptions. (Doc. 199, at 2). Defendant argues, "Local Rule 7(e) could not be amended by the Order because under Fed. R. Crim. P. 57(a) a Local Rule may only be amended by 'a majority of [the] district judges . . . after giving appropriate public notice and opportunity for comment[.]" (*Id.*) (alterations in original). "Further," defendant argues, "Local Rule 1(e) which provides that '[t]he Local Rules are subject to modification in any case at the discretion of the

---

[6] To be clear, Judge Roberts cannot be faulted for failing to consider defendant's reply when it was filed after Judge Roberts filed his R&R.

presiding judge' cannot be invoked to justify the Order as it also conflicts with Fed. R. Crim. P. 57(a)'s requirement of public notice and comment." (*Id.*, at 2–3).

Defendant is mistaken. Local Rule 1(e) provides that a presiding judge may modify the Local Rules in a case. That rule is itself a Local Rule that complies with Federal Rule of Criminal Procedure 57(a). The Administrative Order reflects a decision by the Northern District Judges, as a whole, of the need to modify Local Rule 7(e) with respect to pro se pleadings when the United States is a party. Regardless, even if the Administrative Order somehow runs afoul of the Federal Rules of Criminal Procedure, the Court has the inherent authority to extend deadlines for parties when it sees fit. Here, the Court would approve the extension of the deadline for the government because it relied in good faith on an administrative order that instructed the government that it need not respond to a pro se filing unless ordered to do so by the Court. In short, defendant's attempt to prevent the Court from addressing the merits of the dispute here fails.

Thus, the Court **denies** defendant's Motion to Enforce Mandatory Claim-Processing Rule. (Doc. 191). The Court finds it appropriate to consider the government's pleadings filed at Doc. 195 in resistance to defendant's Motion to Set Aside Declaration of Administrative Forfeiture (Doc. 190).

### B.      *De Novo Review Notwithstanding Judge Roberts' R&R*

Turning to Judge Roberts' R&R on defendant's motions, the Court finds that although it need only conduct a de novo review of "those portions of the report or specified proposed findings or recommendation to which objection is made," 28 U.S.C. § 636(b)(1)(C), the better approach here is to simply review defendant's motions in their entirety under a de novo standard. *See See Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("[W]hile the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard."). This approach is simpler and more appropriate here, where defendant has objected to many portions of the R&R,

including to Judge Roberts' failure to consider defendant's reply brief at Doc. 199, filed *after* Judge Roberts issued his R&R, in which defendant raises, among other things, his argument concerning the government's violation of the sixty-day notice deadline with respect to the administrative forfeiture proceedings. The Court will consider the parties' objections to Judge Roberts' R&R as though they constitute supplemental briefing on defendant's motions.

On de novo review, the Court finds the government's argument as to the effect of defendant's plea agreement wins the day here and disposes of defendant's motions under both Section 983(e) and Rule 41(g). Because defendant voluntarily abandoned any interest he had in the property at issue, he cannot now argue for its return because, as a threshold matter, he lacks standing to do so.

### C. *Defendant Lacks Standing to Seek Return of Property*

Defendant asserts that under Title 18, United States Code, Section 983(a)(1)(A)(i), the government had sixty days after the seizure of property to notify him of the administrative forfeiture proceeding, and here the government did not send notice to him at the Linn County Jail until more than eighty days had elapsed after the initial seizure. Defendant argues as follows:

> This had the effect of rendering the subsequent publication of notice and declaration of administrative forfeiture to be void. And since there was never a valid publication of notice, the date on which to file a § 983(e) motion—the last day of the publication-of-notice period—never occurred and the limitations period, thus, never accrued. Accordingly, [defendant's] § 983(e) motion is timely and § 983(a)(1)(F) requires the return of his property.

(Doc. 201, at 3).

The Court need not address issues regarding defendant's notice and the limitations period under Section 983(e) because defendant lacks an interest in any of the property he now seeks to recover, which deprives him of standing.

Section 983(e) provides, in pertinent part, as follows:

20

> (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture *with respect to that person's interest in the property*, which motion shall be granted if--
>
> > (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
> >
> > (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e) (emphasis added). Because a movant seeking to set aside a declaration of forfeiture under Section 983(e) may only do so "with respect to [their] interest in the property," they must necessarily have an interest in the property. *See United States v. Garza*, No. 3:16-CR-00097-FDW-DCK, 2022 WL 2348684, at *2 (W.D.N.C. June 29, 2022) ("Under the plain language of Section 983(e), the movant must have a recognizable interest in the property."); *see also Munoz-Valencia v. United States*, 169 F. App'x 150, 152 (3d Cir. 2006) ("Article III standing requires Munoz–Valencia to show an interest in the property sufficient to create a 'case or controversy.' In the administrative forfeiture context, we have found standing where the claimant shows colorable ownership or colorable possession of the forfeited property." (internal citations omitted)).

The case of *United States v. Stokes*, 191 F. App'x 441 (7th Cir. 2006), is illustrative. There, Stokes sought to recover under Section 983(e)(1) certain items that were seized by law enforcement agent when they arrested him: $7,000 in currency and the proceeds of an $8,000 cashier's check. 191 F. App'x at 442. The government previously obtained a criminal indictment against Stokes, which included a count for the criminal forfeiture of the $7,000 cash and $8,000 cashier's check. *Id.* at 442–43. Stokes then pleaded guilty to the underlying criminal charge under the terms of a plea agreement, and in that agreement he relinquished any interest in the property listed in the indictment.

21

*Id.* at 443. "The defendant agrees," read the relevant term of that plea agreement, "that any interest he holds in each of the listed properties is hereby forfeited." Additionally, the agreement stipulated that "all properties listed in the indictment constitute the proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense." *Id.* The government ultimately did not seek criminal forfeiture of the $7,000 cash and $8,000 cashier's check, though, because the government learned the Drug Enforcement Agency ("DEA") had administratively forfeited those funds; and thus, the district court's judgment did not include an order forfeiting those particular funds. *Id.* Notably, the Seventh Circuit stated, "Nothing in the record establishes what notice, if any, the DEA sent to Stokes." *Id.*

As to Stokes' challenge to the administrative forfeiture under Section 983(e)(1), which he brought as someone purportedly entitled to notice who did not receive it, the Seventh Circuit concluded as follows:

> . . . Stokes lacked Article III standing to contest the forfeiture. That is because he abandoned any interests in the property with the language in the plea agreeing "that any interest he holds in each of the listed properties is hereby forfeited." That abandonment stripped him of standing to contest the forfeiture (even though the government had not yet secured its own title to that property). *See United States v. Le*, 173 F.3d 1258, 1277–78 (10th Cir. 1999); *United States v. Grover*, 119 F.3d 850, 852 (10th Cir. 1997); *see also* David B. Smith, *Prosecution and Defense of Forfeiture Cases* § 9.04[2][a] (2006) (explaining that Article III standing to contest forfeiture requires some kind of interest in property); *United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 734 (8th Cir. 2001) (same); *United States v. $94,000.00 in U.S. Currency, Along With Any Interest Earned Thereon in First Financial Sav. Ass'n Account No. 79–70063411*, 2 F.3d 778, 790 n. 11 (7th Cir. 1993) (same).

191 F. App'x at 444.

The Court finds the reasoning of *Stokes* persuasive. Here, defendant lacks Article III standing to move to set aside the Declarations of Administrative Forfeiture under Section 983(e) because he has no longer has an interest in any of that property by virtue

of the plea agreement. Generally speaking, "plea bargains are essentially contracts," *Garza v. Idaho*, 586 U.S. 232, 238 (2019) (quotation omitted), and they are binding on both parties, *United States v. Ritchison*, 887 F.3d 365, 369. Here, there is no question that by executing the plea agreement, defendant knowingly and voluntarily abandoned his interests in all the property seized in connection with his prosecution, and this includes all the items that were administratively forfeited by the ATF. *See Benjamin v. Lindner Aviation, Inc.*, 534 N.W.2d 400, 406 (Iowa 1995) ("Abandonment is shown by proof that the owner intends to abandon the property and has voluntarily relinquished all right, title and interest in the property."). Defendant has nowhere argued that he lacked capacity or misunderstood the terms of the agreement. To the contrary, at the plea hearing, Judge Roberts confirmed with defendant that he had initialed the paragraphs in the plea agreement to indicate that he read, understood, and agreed to the terms of each paragraph. (Doc. 196, at 24). Defendant cannot seek the return of property in which he has no legal interest, including the administratively forfeited items at issue here, and his motion under Section 983(e) fails on that basis.

Defendant's abandonment of any interest in the seized property under the terms of the plea agreement likewise precludes his attempt to recover that property to the extent he seeks to do so under Rule 41(g), regardless of whether those items were administratively forfeited. Thus, it is a fact of no consequence that some of the items defendant seeks here were never covered by the administrative forfeiture proceedings— namely the iPhone, $840 in cash, and possibly certain firearms. Again, defendant lacks standing to seek the return of any of the property at issue because he knowingly and voluntarily abandoned any interest in that property by executing the plea agreement. *See United States v. Spencer*, Criminal No. 22-10241-FDS, 2023 WL 8006341, at *2–3 (D. Mass. Nov. 17, 2023) (denying defendant's motion for return of property under Rule 41(g) because "the plain terms of the plea agreement preclude him from asserting a possessory interest" in the property); *id.* at *2 ("At least five circuit courts have addressed

23

whether a binding plea agreement can vitiate a defendant's possessory interest in reclaiming seized property. All determined that—absent evidence that the agreement is invalid—it does."); *see also Bastian v. United States*, No. 8:17CV309, 2019 WL 1040983, at *5 (D. Neb. Mar. 5, 2019) (examining plea agreement language virtually identical to that of the plea agreement here and concluding that the criminal defendant, who initialed every paragraph, "waived any claims he might have regarding the property seized by law enforcement").

This outcome is also equitable. To hold otherwise would allow a defendant to sandbag the government by agreeing in a plea agreement to surrender all interest in property, only to then lie in wait to challenge the technicalities of later administrative or statutory forfeiture actions. The government had the right to rely upon the agreement it reached with defendant, that reflected concessions by both parties, to proceed without undue concern about the disposition of the property defendant abandoned.

In short, defendant's attempts to recover property under both Section 983(e) and Rule 41(g) fail at the outset for want of standing, as defendant has no interest in any of the property at issue by virtue of his execution of the plea agreement.[7]

## IV.   CONCLUSION

For these reasons:

1.    Defendant's Motion for Reconsideration (Doc. 202) is **granted**. The Court has reconsidered Judge Roberts' order (Doc. 197) denying defendant's Motion to Enforce Mandatory Claim Processing Rule (Doc. 191).

---

[7] Because defendant's motions fail at the threshold of standing, the Court need not determine the nature of the government's interest in any of the property at issue. It is worth noting, specifically, that the Court makes no determination here as to the government's interest in property not covered by the administrative forfeiture proceedings. *See United States v. Wright*, 49 F.4th 1221, 1227 (9th Cir. 2022) ("Simply because the government has demonstrated that Wright is not entitled to lawful possession, it does not follow that the government has perfected title in the seized property.").

2. On reconsideration, defendant's Motion to Enforce Mandatory Claim Processing Rule (Doc. 191) is **denied**.

3. Defendant's Motion for Return of Seized Property (Doc. 185) and Motion to Set Aside Declaration of Administrative Forfeiture (Doc. 190) are **denied**.

4. Judge Roberts' R&R (Doc. 198) is **adopted** to the extent it recommends denial of defendant's motions.

**IT IS SO ORDERED** this 20th day of August, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa